JUDGE CARTER

**DAWN M. CARDI & ASSOCIATES**
Two Park Avenue, 19th Floor
New York, NY 10016
(212) 481-7770 (tel.)
(212) 684-3008 (fax)
Chad L. Edgar
Dawn M. Cardi
cedgar@cardilaw.com
dcardi@cardilaw.com
*Attorneys for Plaintiff John Palimeri*

# 13 CV 8251

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOHN PALMIERI,

                Plaintiff,

        - against -

NEW YORK STOCK EXCHANGE EURONEXT,
AND STEVEN SCHIFF, Individually,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

No. __ Civ.

**COMPLAINT**

**ECF CASE**

**JURY TRIAL DEMANDED**

RECEIVED
NOV 19 2013
U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiff JOHN PALMIERI (hereafter "Plaintiff" or "Mr. Palmieri" or "Palmieri"), by his

attorney Dawn M. Cardi & Associates, alleges as his Complaint against defendants New York

Stock Exchange Euronext (hereafter "NYSE"), and Steven Schiff (hereafter "Schiff")

(collectively "the Defendants") as follows:

## JURISDICTION AND VENUE

      1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and

1343(a)(3) and (4), 29 U.S.C. § 621 et seq.; the supplemental jurisdiction of this Court over state

and city claims is invoked under 28 U.S.C. § 1367(a).

2.     Venue is proper within this District since a substantial part of the unlawful conduct complained of herein occurred within the Southern District of New York, State of New York, and City of New York.

3.     Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to the Age in Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et. seq. ("ADEA"), the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 290 et seq. and the New York City Human Rights Law, ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

4.     On or about April 16, 2013, within 300 days of Plaintiff's termination by NYSE, which occurred on or around June 29, 2013, Mr. Palmieri filed a Charge of Discrimination ("the Charge") with the Equal Employment Opportunity Commission ("EEOC") complaining of acts of age discrimination and retaliation by the Defendants. Upon information and belief, and in accordance with standard practice, the EEOC referred a copy of Mr. Palmieri's Charge to the New York State Division of Human Rights.

5.     On or about September 27, 2013, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff has fully complied with the administrative requisites of the ADEA and exhausted the administrative remedies provided therein.

6.     Plaintiff's claims under the New York State Human Rights Law and the New York City Human Rights Law were tolled during the pendency of Plaintiff's charge at the EEOC.

## PARTIES

7.     Mr. Palmieri currently resides in New York County, New York.  He is a male born in the year of 1948 and was, at all times relevant hereto, an employee of NYSE.

8.     NYSE is, upon information and belief, a for-profit corporation authorized to do business in the State of New York that operates as a stock exchange and also provides financial products and services, including the provision of market data, to businesses throughout the world.  NYSE maintains offices at 11 Wall Street, New York, NY 10005.

9. Upon information and belief, NYSE has over 3000 employees and is an employer within the meaning of the ADEA, 29 U.S.C. § 630(b), the New York State Human Rights Law, N.Y. Executive Law § 292 and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-102

10.     During the relevant period, at NYSE, Schiff was an employee at NYSE.  On information and belief, Schiff held the title of Senior Vice President or Vice President and was Mr. Palmieri's immediate supervisor.

## PERTINENT FACTS

11.     On October 4, 2010, Mr. Palmieri commenced employment at NYSE.  His job title was Product Development Manager and he worked in the Service Development Department associated with information technologies.

12.     While Mr. Palmieri was employed at NYSE, his immediate supervisor was Schiff. Schiff had supervisory powers over staff in the Service Development Department, which staff included Mr. Palmieri.  Schiff had the power to hire and fire employees, set their work schedules to the extent of assigning projects to them, control their work conditions and their rate of pay.

3

Mr. Palmieri was one of the employees over whom Schiff wielded the aforementioned power or powers.

13.    At the time that Mr. Palmieri interviewed for employment at NYSE and when he commenced employment there, he was coloring his otherwise gray hair in order to appear younger than his then age of 64.  Notably, Mr. Palmieri pursued a college degree later in his life (he obtained a bachelor's degree at 43 years of age and a master's degree at 48 years of age); therefore, it is difficult to discern his age by reviewing a resume that details his employment and education history.

14.    A few months after he commenced employment at NYSE, Mr. Palmieri ceased coloring his hair; soon thereafter, his hair appeared predominantly gray.

15.    At about the time that Mr. Palmieri ceased coloring his hair, Schiff began targeting Mr. Palmieri for abuse.  The abuse initially came in the form of verbal hectoring that was tinged with ageist animus.  During meetings attended by Mr. Palmieri, Schiff and the staff comprising the Service Development Department, Schiff would ask Mr. Palmieri if he was falling asleep if he was quiet.  Or he would yell at Mr. Palmieri, asking him something to the effect of, "Where's the energy?"  If during these meetings, Mr. Palmieri asked Schiff or another member of the Department a clarification question or appeared confused, Schiff would observe to the rest of Mr. Palmieri's co-workers that Mr. Palmieri was having a senior moment.

16.    The abuse that Schiff directed at Mr. Palmieri at these meetings occurred many times a week, was constant, noted by his co-workers, and was deeply disturbing to Mr. Palmieri.

17.    Notably, the Service Development Department was predominantly comprised of workers considerably younger than Mr. Palmieri.  Mr. Palmieri had one other co-worker in the Service Development Department closer to his age and who commenced employment at about

4

the same time. He was targeted for abuse by Schiff too. Schiff fired this co-worker after approximately six months of employment.

18.     Schiff's targeting of Mr. Palmieri for abuse was not limited to verbal abuse. Within months of his hire, Schiff expanded Mr. Palmieri's duties to include multiple projects. On information and belief, Schiff assigned to Mr. Palmieri more projects than any of his younger co-workers. When Mr. Palmieri became concerned that he had too many projects on his plate and sought Schiff's help by having him either identify which project was the priority or re-assign co-workers to assist Mr. Palmieri with his projects, Schiff responded to his pleas for help by telling him he was too slow or tired or unable to keep up with his co-workers – comments that were clearly intended to imply that he was too old to do his job. On information and belief, Schiff would respond to similar pleas for help by Mr. Palmieri's younger co-workers by re-assigning their projects to others or by providing them with additional staff to help them get their projects done.

19.     After nearly a year of verbally abusing Mr. Palmieri and assigning to him more projects than he could handle and far more than he assigned to any of Mr. Palmieri's younger co-workers, in or around September of 2011, Schiff escalated his abuse of Mr. Palmieri by giving him an informal written warning that he was failing in his work performance. Shortly thereafter and in response to this clear signal that Schiff was intent on seeking his termination, Mr. Palmieri was admitted to the hospital for observation because of acute chest pain, which was eventually diagnosed as an episode of acute anxiety.

20.     When Mr. Palmieri returned to work after his episode of acute anxiety, he sought the assistance of NYSE's Human Resources department ("HR"). Mr. Palmieri contacted a representative and complained of Schiff's targeting of him for abuse. Although Mr. Palmieri

asked that his complaint be kept anonymous by HR, Schiff did learn that an employee

complained about him. He suspected that it was Mr. Palmieri. Nonetheless, his abuse of Mr.

Palmieri continued undeterred in the same form – verbal abuse in front of his co-workers and the

continual denial of Mr. Palmieri's requests that Schiff either tell Mr. Palmieri which projects

were a priority or provide him with assistance to complete them.

21.     On or about December 16, 2011, Schiff once again escalated his abuse of Mr.

Palmieri by forcing him to sign a formal written warning that his performance was deficient. His

evaluation of Mr. Palmieri's sub-performance was inaccurate and, on information and belief,

manufactured. He claimed that Mr. Palmieri was late in meeting deadlines on one project, which

was false. Also, he claimed that he had to replace Mr. Palmieri on another project because of his

slow turnaround time. Mr. Palmieri's slow turnaround time on the other project was directly

attributable to the fact that Schiff had stripped Mr. Palmieri of the key assistance of a co-worker.

When he replaced Mr. Palmieri with a co-worker on this project, Schiff gave that co-worker the

very assistance that he had stripped from Mr. Palmieri. On account of that help, the co-worker

was able to complete the project. These were yet more examples of the manner in which Schiff

treated Mr. Palmieri differently from his younger co-workers.

22.     After receiving the written warning from Schiff, who, on information and belief,

timed the warning's receipt right before the holidays, once again Mr. Palmieri sought out the

assistance of HR in or around January of 2012. At a meeting with an HR representative, again

Mr. Palmieri complained about Schiff's abuse. Soon after this meeting, Schiff came and spoke

to Mr. Palmieri. He said that he had learned that Mr. Palmieri had complained about him. He

went on to state that he knew that he could not fire Mr. Palmieri for cause because Mr. Palmieri

was competent but he would make sure that Mr. Palmieri would be the first employee to go in the next layoff or reduction in force.

23.     Around the same time that Schiff gave Mr. Palimieri the written warning about his deficient work performance, Schiff also made sure that Mr. Palmieri did not receive a bonus. In or around January of 2012, on information and belief, Schiff interviewed most of Mr. Palmieri's co-workers in the same department with respect to their eligibility for a bonus. He did not interview Mr. Palmieri with respect to his eligibility for a bonus. On information and belief, a month or two later, most of Mr. Palmieri's co-workers in the same department received bonuses. Mr. Palmieri did not recieve a bonus in 2012.

24.     NYSE implemented a reduction-in-force plan in June of 2012. Mr. Palmieri was designated as a target of the layoff. On information and belief, Schiff designated Mr. Palmieri as a target for the layoff.

25.     Mr. Palmieri's last day of work at NYSE was on or around June 29, 2012.

26.     At all times while an employee at NYSE, Mr. Palmieri was qualified for his job.

27.     Schiff's disparate treatment of Mr. Palmieri and his targeting of him for verbal and other abuse was because of his animus towards Mr. Palmieri based on his older age.

## COUNT ONE

### *(Age Discrimination in Violation of the ADEA)*

28.     Plaintiff repeats and realleges each and every allegation set forth above as if it were recounted at length herein.

29.     NYSE's disparate treatment of Mr. Palmieri, including, but not limited to, its decision to terminate him pursuant to a reduction-in-force plan in or around June of 2012, was because he was over 40 years of age.

7

30.    Mr. Palmieri's termination from NYSE occurred in the context of circumstances supporting an inference of discrimination.

31.    Mr. Palmieri's termination was a tangible and adverse employment action that constituted age discrimination in violation of the ADEA.

32.    As a result of NYSE's actions, Mr. Palmieri suffered substantial economic losses, including, but not limited to, salary, bonuses, other monetary benefits, emotional harm and psychological trauma, with associated physical symptoms.

33.    As NYSE engaged in discriminatory practices with malice or reckless indifference for Mr. Palmieri's federally protected statutory rights, Mr. Palmieri also requests an award of punitive damages in an amount to be determined at trial.

**WHEREFORE**, Mr. Palmieri seeks judgment against NYSE for compensatory and punitive damages, counsel fees, court costs and fees, and such other relief as the Court deems just and appropriate under the circumstances.

### COUNT TWO

### *(Hostile Work Environment in Violation of the ADEA)*

34.    Mr. Palmieri repeats and realleges each and every allegation set forth above as if it were recounted at length herein.

35.    NYSE's disparate treatment of Mr. Palmieri also included maintaining a work environment that was hostile to Mr. Palmieri based on his age.

36.    The hostile work environment was caused by the conduct of Schiff who had the authority to alter the terms, conditions and privileges of Mr. Palmieri's employment.

37.    The unwelcome, hostile, age-based and severely abusive comments and conduct of Schiff permeated Mr. Palmieri's work environment. The unwelcome, hostile, age-based and

8

severely abusive comments of Schiff were sufficiently severe and/or pervasive to alter the terms and conditions of Mr. Palmieri's employment at NYSE. A reasonable person would have found the work environment at NYSE to be pervaded by unwelcome, hostile, age-based and severely abusive comments. Mr. Palmieri himself found the work environment to be so pervaded.

38.    The unwelcome, hostile, age-based and severely abusive comments and conduct of Schiff constituted a policy or practice of sexual harassment based on age and a continuing violation up to and including the last instance of such comments and conduct in June of 2012. Further, the unwelcome, hostile, age-based and abusive comments and conduct of Schiff constituted a continuing violation because NYSE had notice and knowledge of the age-based harassment of Mr. Palmieri but permitted it to continue unremedied for so long as to amount to discriminatory policy or practice.

39.    Accordingly, Mr. Palmieri's complaint encompasses all discriminatory conduct and harassment by NYSE as part of the violations complained of herein, even conduct that would otherwise be outside of the ADEA's statute of limitations period.

40.    NYSE, including but not limited to representatives of its management such as Schiff, failed to exercise reasonable care to prevent and correct promptly the hostile work environment created by the behavior and conduct of Schiff.

41.    The unwelcome, hostile, age-based and severely abusive comments and conduct of Schiff constituted discrimination against Mr. Palmieri based on his age with respect to the terms, conditions, and privileges of his employment in violation of the ADEA.

42.    As a result of NYSE's unlawful discrimination, Mr. Palmieri has suffered substantial economic losses, including, but not limited to, salary, bonuses, other monetary benefits, emotional harm and psychological trauma, with associated physical symptoms.

43.    As NYSE engaged in discriminatory practices with malice or reckless indifference for Mr. Palmieri's federally protected statutory rights, Mr. Palmieri also requests an award of punitive damages in an amount to be determined at trial.

**WHEREFORE**, Mr. Palmieri seeks judgment against NYSE for compensatory and punitive damages, counsel fees, court costs and fees, and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT THREE

### *(Retaliation for Complaining about Age Discrimination in Violation of the ADEA)*

44.    Mr. Palmieri repeats and realleges each and every allegation set forth above as if it were recounted at length herein.

45.    NYSE's disparate treatment of Mr. Palmieri, including, but not limited to, its decision to terminate him pursuant to a reduction-in-force plan in or around June of 2012, was because Mr. Palmieri complained to HR about age discrimination and/or hostile work environment based on age.

46.    NYSE's actions constituted retaliation in violation of the ADEA.

47.    As a result of NYSE's actions, Mr. Palmieri suffered substantial economic losses, including but not limited to salary, bonuses, other monetary benefits, emotional harm and psychological trauma, with associated physical symptoms.

48.    As NYSE engaged in discriminatory practices with malice or reckless indifference for Mr. Palmieri's federally protected statutory rights, Mr. Palmieri also requests an award of punitive damages in an amount to be determined at trial.

**WHEREFORE**, Mr. Palmieri seeks judgment against NYSE for compensatory and punitive damages, counsel fees, court costs and fees, and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT FOUR

### (Age Discrimination in Violation
### Of the New York State Human Rights Law § 296(1)(a))

49.     Mr. Palmieri repeats and realleges each and every allegation set forth above as if recounted at length herein.

50.     NYSE and Schiff's disparate treatment of Mr. Palmieri, including, but not limited to, their decision to terminate him pursuant to a reduction-in-force plan in or around June of 2012, was because he was over 40 years of age.

51.     NYSE and Schiff's conduct, as described above, constituted age discrimination in violation of New York Human Rights Law.

52.     Schiff is individually liable for the disparate treatment of Mr. Palmieri because he possessed authority over employees, including Mr. Palmieri, which authority involved more than carrying out the personnel decisions made by others at NYSE.

53.     As a result of NYSE and Schiff's actions, Mr. Palmieri suffered substantial economic losses, including but not limited to salary, bonuses, other monetary benefits, emotional harm and psychological trauma, with associated physical symptoms.

**WHEREFORE**, Mr. Palmieri seeks judgment against NYSE and Schiff individually for compensatory damages, counsel fees, court costs and fees, and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT FIVE

### (Hostile Work Environment in Violation of the New York State Human Rights Law § 296(1)(a))

54.    Mr. Palmieri repeats and realleges each and every allegation set forth above as if it were recounted at length herein.

55.    NYSE and Schiff's disparate treatment of Mr. Palmieri also included maintaining a work environment that was hostile to Mr. Palmieri based on the fact that he was older than 40 years.

56.    The hostile work environment was caused by Schiff who had the authority to alter the terms, conditions and privileges of Mr. Palmieri's employment.

57.    The unwelcome, hostile, age-based and severely abusive comments and conduct of Schiff permeated Mr. Palmieri's work environment.  The unwelcome, hostile, age-based and severely abusive comments of Schiff were sufficiently severe and/or pervasive to alter the terms and conditions of Mr. Palmieri's employment at NYSE.  A reasonable person would have found the work environment at NYSE to be pervaded by unwelcome, hostile, age-based and severely abusive comments.  Mr. Palmieri himself found the work environment to be so pervaded.

58.    The unwelcome, hostile, age-based and severely abusive comments and conduct of Schiff constituted a policy or practice of harassment based on age and a continuing violation up to and including the last instance of such comments and conduct in June of 2012.  Further, the unwelcome, hostile, age-based and abusive comments and conduct of Schiff constituted a continuing violation because NYSE and Schiff had notice and knowledge of the harassment of Mr. Palmieri based on age but permitted it to continue unremedied for so long as to amount to discriminatory policy or practice.

59.    Accordingly, Mr. Palmieri's complaint encompasses all discriminatory conduct and harassment by NYSE and Schiff as part of the violations complained of herein, even conduct that would otherwise be outside of the relevant statute of limitations period.

60.    NYSE and Schiff failed to exercise reasonable care to prevent and correct promptly the harassing behavior and conduct of Schiff.

61.    The unwelcome, hostile, age-based and severely abusive comments and conduct of NYSE and Schiff constituted discrimination against Mr. Palmieri based on his age with respect to the terms, conditions, and privileges of his employment in violation of New York Human Rights Law.

62.    Schiff is individually liable for the disparate treatment of Mr. Palmieri because he possessed authority over employees, including Mr. Palmieri, that involved more than carrying out the personnel decisions made by others at NYSE.

63.    As a result of NYSE and Schiff's unlawful discrimination, Mr. Palmieri has suffered substantial economic losses, including, but not limited to, salary, bonuses, other monetary benefits, emotional harm and psychological trauma, with associated physical symptoms.

**WHEREFORE**, Mr. Palmieri seeks judgment against NYSE and Schiff individually for compensatory damages, counsel fees, court costs and fees and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT SIX

### *(Retaliation in Violation of the*
### *New York Human Rights Law § 296(1)(e))*

64.    Mr. Palmieri repeats and realleges each and every allegation set forth above as if recounted at length herein.

65. NYSE and Schiff's disparate treatment of Mr. Palmieri, including, but not limited to, their decision to terminate him pursuant to a reduction-in-force plan in or around June of 2012, was because Mr. Palmieri complained of age discrimination and/or hostile work environment based on age.

66. NYSE and Schiff's decision to terminate Mr. Palmeri for complaining about age discrimination constituted retaliation in violation of New York Human Rights Law.

67. Schiff is individually liable for the disparate treatment of Mr. Palmieri because he possessed authority over employees, including Mr. Palmieri, which authority involved more than carrying out the personnel decisions made by others at NYSE.

68. As a result of NYSE and Schiff's actions, Mr. Palmieri suffered substantial economic losses, including but not limited to salary, bonuses, other monetary benefits, emotional harm and psychological trauma, with associated physical symptoms.

**WHEREFORE**, Mr. Palmieri seeks judgment against NYSE and Schiff individually for compensatory damages, counsel fees, court costs and fees and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT SEVEN

### *(Aiding and Abetting in Violation of the New York Human Rights Law § 296(6))*

69. Mr. Palmieri repeats and realleges each and every allegation set forth above as if recounted at length herein.

70. Schiff's disparate treatment of Mr. Palmieri, including, but not limited to, his decision to terminate Mr. Palmieri pursuant to a reduction-in-force plan in or around June of 2012, was because Mr. Palmieri was over 40 years of age. As Schiff was the individual who demonstrated age-based animus towards Mr. Palmieri and who, on information and belief,

designated him as a target for the June 2012 layoff, Schiff is individually liable as an aider and abettor of the disparate treatment of Mr. Palmieri in violation of New York State's Human Rights Law § 296(6).

71.     Schiff engaged in unwelcome, hostile, age-based and severely abusive comments that constituted a hostile work environment to which Mr. Palmieri was subjected. Therefore, Schiff is individually liable as an aider and abettor of that hostile work environment in violation of New York State's Human Rights Law § 296(6).

72.     Schiff retaliated against Mr. Palmieri for complaining about Schiff's ongoing harassing conduct based on his age. As Schiff was the individual who retaliated against Mr. Palmieri for the aforementioned complaints, he is individually liable as an aider and abettor of retaliation against Mr. Palmieri in violation of New York State's Human Rights Law § 296(6).

73.     As a result of Schiff's actions, Mr. Palmieri suffered substantial economic losses, including but not limited to salary, bonuses, other monetary benefits, emotional harm and psychological trauma, with associated physical symptoms.

**WHEREFORE**, Mr. Palmieri seeks judgment against Schiff individually for compensatory damages, counsel fees, court costs and fees and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT EIGHT

### (Age Discrimination in Violation of the
### New York City Administrative Code 8-107(1)(a))

74.     Mr. Palmieri repeats and realleges each and every allegation set forth above as if recounted at length herein.

15

75.     NYSE and Schiff's disparate treatment of Mr. Palmieri, including, but not limited to, their decision to terminate him pursuant to a reduction-in-force plan in or around June of 2012, was because Mr. Palmieri was over 40 years of age.

76.     The adverse employment actions to which Mr. Palmieri was subjected occurred in the context of circumstances supporting an inference of discrimination. They were also tangible employment actions in the manner that they altered the conditions of Mr. Palmieri's employment. Therefore, each of these actions constituted age discrimination in violation of the New York City Administrative Code.

77.     As a result of NYSE and Schiff's actions, Mr. Palmieri suffered substantial economic losses, including, but not limited to, salary, bonuses, other monetary benefits, emotional harm and psychological trauma, with associated physical symptoms.

78.     NYSE and Schiff's conduct, as described above, constituted age discrimination in violation of New York City Administrative Code 8-107(1)(a).

79.     Schiff is individually liable for the disparate treatment of Mr. Palmieri because he possessed authority over employees, including Mr. Palmieri, which authority involved more than carrying out the personnel decisions made by others at NYSE.

80.     As NYSE and Schiff engaged in discriminatory practices with malice or reckless indifference for Mr. Palmieri's protected rights under the New York City Administrative Code, Mr. Palmieri also requests an award of punitive damages in an amount to be determined at trial.

**WHEREFORE**, Mr. Palmieri seeks judgment against NYSE and Schiff individually for compensatory and punitive damages, counsel fees, court costs and fees and such other relief as the Court deems just and appropriate under the circumstances.

16

## COUNT NINE

### *(Hostile Work Environment in Violation of the New York City Adminstrative Code 8-107(1)(a))*

81.    Mr. Palmieri repeats and realleges each and every allegation set forth above as if it were recounted at length herein.

82.    NYSE and Schiff's disparate treatment of Mr. Palmieri also included maintaining a work environment that was hostile to Mr. Palmieri based on the fact that he was older than 40 years old.

83.    The hostile work environment was caused by Schiff who had the authority to alter the terms, conditions and privileges of Mr. Palmieri's employment.

84.    The unwelcome, hostile, age-based and severely abusive comments and conduct of Schiff permeated Mr. Palmieri's work environment.  The unwelcome, hostile, age-based and severely abusive comments of Schiff were sufficiently severe and/or pervasive to alter the terms and conditions of Mr. Palmieri's employment at NYSE.  A reasonable person would have found the work environment at NYSE to be pervaded by unwelcome, hostile, age-based and severely abusive comments.  Mr. Palmieri found the work environment to be so pervaded.

85.    The unwelcome, hostile, sex-based and severely abusive comments and conduct of Schiff constituted a policy or practice of harassment based on age and a continuing violation up to and including the last instance of such comments and conduct in or around June of 2012.  Further, the unwelcome, hostile, age-based and abusive comments and conduct of Schiff constituted a continuing violation because NYSE and Schiff had notice and knowledge of the harassment of Mr. Palmieri based on age but permitted it to continue unremedied for so long as to amount to discriminatory policy or practice.

86.    Accordingly, Mr. Palmieri's complaint encompasses all discriminatory conduct and harassment by NYSE and Schiff as part of the violations complained of herein, even conduct that would otherwise be outside of the relevant statute of limitations period.

87.    NYSE and Schiff failed to exercise reasonable care to prevent and correct promptly the discriminatory behavior and conduct of Schiff.

88.    The unwelcome, hostile, age-based and severely abusive comments and conduct of Schiff constituted discrimination against Mr. Palmieri based on his age with respect to the terms, conditions, and privileges of his employment in violation of New York City Administrative Code.

89.    As a result of NYSE and Schiff's unlawful discrimination, Mr. Palmieri has suffered substantial economic losses, including, but not limited to, salary, bonuses, commissions, other monetary benefits, emotional harm and psychological trauma, with associated physical symptoms.

90.    Schiff is individually liable for the disparate treatment of Mr. Palmieri because he possessed authority over employees, including Mr. Palmieri, which authority involved more than carrying out the personnel decisions made by others at NYSE.

91.    As NYSE and Schiff engaged in discriminatory practices with malice or reckless indifference for Mr. Palmieri's rights under the New York City Administrative Code, Mr. Palmieri also requests an award of punitive damages in an amount to be determined at trial.

**WHEREFORE**, Mr. Palmieri seeks judgment against NYSE and Schiff individually for compensatory and punitive damages, counsel fees, court costs and fees and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT TEN

### *(Retaliation in Violation of the*
### *New York City Administrative Code 8-107(7))*

92.     Mr. Palmieri repeats and realleges each every allegation set forth above as if recounted at length therein.

93.     NYSE and Schiff's disparate treatment of Mr. Palmieri, including, but not limited to, its decision to terminate him pursuant to a reduction-in-force plan in or around June of 2012, was because Mr. Palmieri complained of age discrimination and/or hostile work environment based on age.

94.     NYSE and Schiff's actions constituted retaliation in violation of New York City Administrative Code 8-107(7).

95.     As a result of NYSE and Schiff's actions, Mr. Palmieri suffered substantial economic losses, including but not limited to salary, bonuses, other monetary benefits, emotional harm and psychological trauma, with associated physical symptoms.

96.     As NYSE and Schiff engaged in discriminatory practices with malice or reckless indifference for Mr. Palmieri's rights under the New York City Administrative Code, Mr. Palmieri also requests an award of punitive damages in an amount to be determined at trial.

**WHEREFORE**, Mr. Palmieri seeks judgment against NYSE and Schiff individually for compensatory and punitive damages, counsel fees, court costs and fees and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT ELEVEN

### *(Aiding and Abetting In Violation of the New York City Administrative Code 8-107(6))*

97.    Mr. Palmieri repeats and realleges each and every allegation set forth above as if recounted at length herein.

98.    NYSE and Schiff's disparate treatment of Mr. Palmieri, includes but is not limited to their decision to terminate him pursuant to a reduction-in-force plan in or around June of 2012 because of his age.    As Mr. Palmieri's supervisor who, on information and belief, designated Mr. Palmieri as a target for lay-off, Schiff is an aider and abettor of NYSE's intentional discrimination based on age directed against Mr. Palmieri in violation of the New York City Administrative Code and as such is individually liable for that discrimination.

99.    Schiff engaged in unwelcome, hostile, age-based and severely abusive comments that constituted a hostile work environment to which Mr. Palmieri was subjected.    Therefore, Schiff is individually liable as an aider and abettor of that hostile work environment in violation of the New York City Administrative Code.

100.    Schiff retaliated against Mr. Palmieri for complaining about ongoing age discrimination at the hands of Schiff by designating Mr. Palmieri as a target for the June 2012 layoff.    On information and belief, Schiff was the individual who so designated Mr. Palmieri and under such circumstances he aided and abetted this act of discriminatory retaliation.    Therefore, Schiff is individually liable as an aider and abettor of the retaliation against Mr. Palmieri for complaining about age discrimination.

101.    As a result of NYSE and Schiff's actions, Mr. Palmieri suffered substantial economic losses, including but not limited to salary, bonuses, other monetary benefits, emotional harm and psychological trauma, with associated physical symptoms.

102.    As Schiff engaged in discriminatory practices with malice or reckless indifference for Mr. Palmieri's rights under the New York City Administrative Code, Mr. Palmieri also requests an award of punitive damages in an amount to be determined at trial.

**WHEREFORE**, Mr. Palmieri seeks judgment against Schiff individually for compensatory and punitive damages, counsel fees, court costs and fees and such other relief as the Court deems just and appropriate under the circumstances.

### PRAYER FOR RELIEF

**WHEREFORE**, Mr. Palmieri respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the discriminatory and retaliatory acts and practices complained of herein are unlawful under the ADEA, NYSHRL and NYCHRL;

b.    An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An order enjoining Defendants to reinstate Mr. Palmieri in employment, with full seniority and all other benefits;

d.    An order enjoining Defendants from engaging in further discriminatory or retaliatory actions against Mr. Palmieri;

e.    An award of punitive damages, compensatory damages, including but not limited to, back and front pay, bonuses, benefits, emotional distress damages, counsel fees, court costs and fees and such other relief as the Court deems just and

appropriate under the circumstances for violations of the ADEA, NYSHRL, and

NYCHRL;

f.      An award of costs and expenses of this action together with attorney's and

expert's fees under the ADEA, NYSHRL and NYCHRL;

g.      An award of prejudgment and post-judgment interest under the ADEA, NYSHRL

and NYSHRL;

h.      A trial by jury;

i.      Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       November 19, 2013

                                DAWN M. CARDI & ASSOCIATES


                                By: _____
                                    Chad L. Edgar
                                    Dawn M. Cardi

                                Two Park Avenue, 19th Floor
                                New York, NY 10016
                                212-481-7770 (tel.)
                                212-684-3008 (fax)
                                cedgar@cardilaw.com
                                dcardi@cardilaw.com
                                *Attorneys for John Palmieri*